Lawrence Bank of Pittsburgh *vs.* Raney & Berger Iron Co., *et al.*

(Decided 15th March, 1893.)

----

THE LAWRENCE BANK OF PITTSBURGH *vs.* THE RANEY & BERGER IRON COMPANY, and the ROBERT POOLE & SON COMPANY.

*Judgment of Condemnation in Attachment—Striking out Judgment—Laches—Evidence—Notice.*

A judgment condemning funds in the hands of garnishees will not be stricken out on the petition of a creditor of the defendant in garnishment, on the ground that before the attachment was

Lawrence Bank of Pittsburgh *vs.* Raney & Berger Iron Co., *et al.*

laid, such defendant had assigned the money due him by the garnishees to the petitioner, and the garnishees had been notified of the assignment, where the petitioner delayed application to have the judgment stricken out for more than eight months after notice of the laying of the attachment.

On the question as to whether the assignee of the petitioner received notice of the attachment, it was shown that the garnishees prepared for mailing a letter containing notice of the attachment, and enclosed it in an envelope, with the firm name printed thereon and a direction to return to them, if not delivered within five days, and placed said letter among the material intended for the post office, according to the usual course of business, together with a similar letter to the defendant in garnishment, which latter was duly received and responded to, while the former was never returned notwithstanding the printed direction on the envelope. In rebuttal the book-keeper of the assignee stated that if the letter had been received, while he would not have been detailed to answer it, it would have come into his hands for filing. Its attorney testified that the company never received the letter in question; that, if any notice of the attachment had been received by the company, it would, necessarily, have come into his hands, and he would have answered it. The secretary and treasurer of the company, who at one time seemed to have been the officer who conducted the correspondence relating to this matter, was not examined. HELD:

That the assignee of the petitioner must be charged with notice of the attachment as of the date of the letter.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, McSHERRY, and BRISCOE, J.

*Richard K. Cross,* and *John H. Thomas,* for the appellant.

*Randolph Barton,* and *Skipwith Wilmer,* for the appellees.

Lawrence Bank of Pittsburgh *vs.* Raney & Berger Iron Co., *et al.*

PAGE, J., delivered the opinion of the Court.

This appeal is from the order of the Court below dismissing the petition of the Lawrence Bank of Pittsburgh to strike out a judgment of condemnation obtained by the Raney & Berger Iron Company, against the Robert Poole & Son Company, of Baltimore City, garnishees of J. D. Long and Company.

The attachment was issued on the twelfth day of March, 1890, judgment of condemnation was entered on the fourteenth day of April following, and the petition of the Lawrence Bank was filed on the thirtieth day of March, 1892, or more than twenty-three months after the judgment was rendered. The allegation upon which the appellant prays that the judgment may be stricken out, is, that it was obtained by fraud, irregularity, and surprise. It is alleged in the petition, that before the attachment was laid, Long and Company had assigned the money due them by the garnishees, to the petitioner, and the garnishees had been notified of the assignment; but that notwithstanding, the garnishees refrained from informing the Court of the assignment, or the petitioner, that the credit had been attached, and, instead thereof, filed an admission of assets in their hands to the credit of Long & Co., whereupon the judgment of condemnation was entered. The petitioners further allege they had no notice or knowledge of the said attachment proceedings. The answer of the Robert Poole & Son Company, denies there was fraud of any kind practiced in the obtention of the judgment; alleges that "immediately upon the laying of the attachment, notice in writing of said attachment was sent by the respondents to, "the Lawrence Bank, or to its representative, or alleged assignee, of any rights it might have acquired to said indebtedness" of the respondents to Long and Company, and "relies upon the gross *laches* of said Lawrence Bank" in allowing such length of time to

Lawrence Bank of Pittsburgh *vs.* Raney & Berger Iron Co., *et al.*

elapse before moving to strike out the said judgment, "as dis-entitling it to the interference" of the Court.

The first question, therefore, presented for our consideration is, had the Lawrence Bank, its representatives or assigns notice of the laying of this attachment, as alleged by the respondent? For if it was informed of it at the time it was issued or laid, and has slept on its rights for nearly two years, we do not think it has acted with such diligence, as will entitle it now, to the relief, for which it asks. "Laches and unreasonable delay are always fatal to motions of this character." *Post and Barrett vs. Bowen,* 35 *Md.,* 232.

After the term, at which the judgment was rendered, has elapsed, a party seeking to set it aside must not only establish his right by clear and convincing proof, but it must also appear that he has acted with ordinary diligence, or, to use another phrase, without unreasonable delay. *Taylor and Wife vs. Sindall,* 34 *Md.,* 38; *Dorsey vs. Kyle, et al.,* 30 *Md.,* 512; *Kemp and Buckey vs. Cook and Ridgely,* 18 *Md.,* 130.

It is alleged on the part of the Robert Poole and Son Company, that on the twelfth day of March, 1890, the day on which the attachment was issued, it addressed a letter to the Fidelity Title and Trust Company of Pittsburgh, (the assignee of the Lawrence Bank,) in the following words:

"Gentlemen: An attachment was this morning laid in our hands by Messrs. Raney and Berger of New Castle, Pa., against any property or funds that we may have in our hands to the credit of Long & Co., of your city, which attachment is returnable on April 2nd proximo. You will please take such action as you deem advisable.

"We are yours truly,

"ROBERT POOLE & SON COMPANY,

"A. Edwards."

Lawrence Bank of Pittsburgh *vs.* Raney & Berger Iron Co., *et al.*

On the other hand, the Fidelity Title and Trust Company deny ever having received this letter, or that otherwise they had any notice of the attachment; but Mr. Ewing the attorney of that Company, states that it was *about a year before he gave in his testimony,* that he "first learned of the payment" of this money under the attachment.   The record does not show the precise time when he testified, but as the reply of the respondents was filed on the thirteenth of April, 1892, and the return of the commissioner in Pittsburgh was made before the thirtieth day of June following, Mr. Ewing must have obtained his information sometime between the first of May and July of the year eighteen hundred and ninety-one, or from nine to eleven months before the filing of the petition.   It is probable the information Mr. Ewing then received, was that contained in the letter to him of Messrs. Barton and Wilmer, dated the 16th July, 1891, in which those gentlemen made a full statement of the matter as it then stood.   The Fidelity Company had been the assignee of the Lawrence Bank, as far back at least as the 23rd November, 1889, and as such had ever since had full power to enforce, in any Court, all the claims which the Lawrence Bank may have had against the Robert Poole and Son Company. It had also during the entire period it was so empowered, full knowledge of the indebtedness of that Company to Long and Company.   It must at least be charged, therefore, with notice of the attachment from the period when its attorney Mr. Ewing obtained his information; and that it delayed its proceedings to have the judgment stricken out for a period of more than eight months afterwards, is quite sufficient in view of the fact that the money has been paid, and of all the circumstances of the case, to compel the Court to declare, that by such prolonged postponement it has been guilty of unreasonable delay, and lost whatever right it might

otherwise have had to the relief for which it asks.
But, apart from this, we are not required to rest our
decision entirely upon this ground, for upon a careful
review of all the evidence pertaining to the subject and
the law applicable to it, we are all of the opinion, that
the Fidelity Company must be held to have had notice
by the letter of the Robert Poole and Son Company of
the 12th March, 1890.

That this letter was written at the dictation of Mr.
George Poole, copied, addressed, prepared for the mail,
and placed "among the mail of the company for that
day" is not disputed.    It also appears that at the same
time a similar letter was written to Long & Co., and
the witness states, "both of them were written, copied
consecutively and prepared for mailing at the same time,
and placed among the mail of the company for that
day."    Both were enclosed in envelopes on which were
printed the words, "Return to Robert Poole & Son Com-
pany, Baltimore, Md., if not delivered within five days."
That addressed to Long & Co. was duly received and
responded to, and the one to the Fidelity Company has
never been returned, notwithstanding the words printed
on the envelope.    Mr. Poole also testifies, that "*in the
course* of business we have a very great many letters
mailed in a similar way;" and we understand this to
mean that these letters were mailed according to the
"course of business," and that the letters so forwarded
by the firm included a "very great many." ·

It is well settled "that if a letter properly directed
is proved to have been either put into the post office or
delivered to the postman, it is presumed, from the known
*course of business* in the Post Office Department, that it
reached its destination at the regular time, and was
received by the person to whom it was addressed."
*Rosenthal vs. Walker*, 111 *U. S.*, 196, and authorities
there cited.

Lawrence Bank of Pittsburgh *vs.* Raney & Berger Iron Co., *et al.*

Mr. Justice Woods in that case, citing from the case of *Huntley vs. Whittier*, 105 *Mass.*, 392, proceeds:—"The presumption so arising is not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the *officers of the government will do their duty*, and *the usual course of business*, and, when it is opposed by evidence, that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question, whether the letters were actually received or not." A like presumption arises from the usual course of the business of a merchant.    If it be proven, that a merchant has a particular method of dispatching his correspondence, and that one of his letters was properly written, copied, addressed, and otherwise prepared for transmission through the post office, and was then placed among the mail of that day, (that is, placed among the material intended for the post office,) according to the usual habit of his house, and that this was the course of business, there follows a reasonable inference that such letter was forwarded and received by the party to whom it was addressed. In *Hetherington vs. Kemp*, 4 *Campbell*, 193, evidence was given by the plaintiff that he wrote a letter at the time and addressed it to the defendant, and put it on a table where letters were usually placed which were to go to the post office. This was held not to be sufficient evidence that the letter was forwarded, but, if it had been proved that all letters so placed were *usually* carried to the post office, it might have done.    And in *Miller vs. Hackley*, 5 *Johns.*, 375, the notary testified that it was *usual* for him, when the drawer or endorser lived at a distance, to send a written notice of the dishonor of the bill to them, by post, on the evening of the same day, and that he believed he had sent such notice in that way, and it was held sufficient.    So in *Dana vs. Kemble*, 19 *Pick.*, 112, in a case where a letter was deposited in an urn in a hotel office, from

which it was customary to distribute letters to guests, it was held there was a presumption of the receipt of the letter by the party to whom it was addressed. 2 *Wharton on Evidence,* sec. 1330; *Thalhimer vs. Brinckerhoff,* 6 *Cowen,* 96; *Pritt vs. Fairclough,* 3 *Campbell,* 305; *Hagedorn vs. Reid,* 3 *Campbell,* 377; *Hawood vs. Daly,* 61 *N. Y.,* 362.

From the circumstances of the preparation of, and dealing of the Robert Poole & Son Company with this letter, we are of the opinion that a presumption of its transmission and receipt must arise, and this presumption is rendered much stronger by the fact that, though the letter was enclosed in an envelope bearing a direction for its return, if not called for in five days, it was never returned to the sender; and also, by the further fact, that the letter to Long & Co., written, prepared, addressed for transmission to the same post office and in all respects treated in the same way, and at the same time, was duly received and responded to by that firm.

But this presumption is not one of law, but a mere inference of fact, and for the purpose of rebutting it the appellant has offered much evidence, which we will now proceed to examine. It appears that four officers of the Fidelity Company have been examined; the book-keeper, Willock, who entered into the service of the company in January, 1890, as a stenographer and type-writer, and has had charge of filing the letters connected with the affairs of the Lawrence Bank; he states, that if the letter had been received, while he would not have been detailed to answer it, it would have come into his hands for filing; William Burt, who became connected with the company in February, 1891; he could have no personal knowledge of the letter, but he made a search for it, without finding it; Franklin Brown, the assistant secretary, who testifies, that *he* never received any communication, &c.; he had caused a search to be made through the records

and papers of the company, without success in finding
such a notice;—and David Q. Ewing, the attorney of
the company, who also "caused" a search to be made,
without results, and whose testimony is, substantially,
that the company never received the letter in question;
that, if any notice of the attachment had been received by
the Fidelity Company, it would necessarily have come in-
to his hands, and he would have answered it. A very im-
portant omission, however, is the failure of the appellant
to examine Mr. C. B. McVay, then and now the secretary
and treasurer of the company. At one time he seems to
have been the officer who conducted the correspondence
relating to this matter. He it was who wrote the letters
of 4th January, 1890, and of 7th January, 1890, signing
each with the name of the Fidelity Company, "Per C. B.
McVay, Treas." By the first of these, the Robert Poole
& Son Co. were requested to remit the amount due Long
& Co., "under assignment" of the Lawrence Bank, and
enclosed was the certificate of the assignment. On the
sixth the Pooles replied, enclosing letter of their coun-
sel, advising them it would not be safe in paying the
claim of the Fidelity Company. That company replied,
"per C. B. McVay, Treas.", regretting "that we will
be compelled to take other measures." Willock testi-
fies that during the years 1890 and 1891, the corre-
spondence relating to the affairs of the Lawrence Bank,
was conducted by *McVay and Ewing;* Brown, that in
1889 and 1890 *McVay* "had charge of the correspond-
ence principally," but in 1890 and 1891, that relating
to the Lawrence Bank was conducted by himself and
Mr. Ewing "principally;" and Mr. Ewing, that the
correspondence of the Lawrence Bank was in his charge
in the latter part of 1889, and since then it has been
conducted by him, but *McVay* "wrote a few letters which
were simply demands for payment;" and later on, he
states, he "cannot give the names of all persons who

may have conducted a correspondence relative to the affairs of the Lawrence Bank during 1889, 1890, 1891, but everything of a legal nature was done by Mr. Mc-Gill" and himself.

Thus it appears that not only did McVay write these two letters and receive the reply to the one which was responded to, (and excepting the letter in question, this comprised the entire correspondence of the year 1890 of the Fidelity Company with the Robert Poole & Son Company,) but that he has had more or less to do with the correspondence of affairs relating to the Lawrence Bank ever since. Mr. Burt states that since he was connected with the Fidelity Company, (February, 1891,) that correspondence was "conducted by *both* Mr. Ewing and Mr. McVay." These facts taken in connection with the further fact, that he was the secretary of the company, makes it reasonable to infer that he, of all the other officers of the Company, would be likely to know something of this letter, if it had been received. In 1890, the letter may have come to him, as did the letter of the Robert Poole & Son Company of the sixth of January, and as he was the secretary of the company, he was the proper person to receive and open all correspondence. The letter may have been misplaced or lost, and in that event, if it had been received by him, he only could testify as to its receipt. We regard him, therefore, as an essential witness in this inquiry, and the omission to call and examine him is fatal. Without his statement, the evidence of the other persons are mere negations, amounting to not much else than averments that they know nothing of the letter in question. He, of all others, the one most likely to have knowledge of a positive kind, is not produced and sworn, though still in the service of the company, and presumably in the full possession of all his faculties. Being therefore of the opinion that the appellant has failed to

rebut successfully the presumption of the receipt of this letter, created by the evidence offered by the appellees, we are constrained to hold that the Fidelity Company must be charged with notice of the laying of the attachment as far back as the date of that letter, that is to say, from March, 1890.

The order of the Court below dismissing the petition of the appellant must therefore be affirmed. We will add, however, without intimating any opinion upon the merits of the case, that, though the appellant be precluded from the relief it seeks in this proceeding, yet, inasmuch as it was not a party to the attachment, it has a full and complete remedy to recover the fund in dispute, if it can make it appear it is legally entitled to it.

*Order affirmed.*

(Decided 16th March, 1893.)