## LAKE ERIE & WESTERN RAILROAD COMPANY
## *v.* FIKE.

[No. 5,393.    Filed May 31, 1905.]

1.    TRIAL.—*Verdict.—General.—Special.—Presumptions.*—The answers to the interrogatories to the jury will not overthrow a general verdict unless they are irreconcilable therewith, the presumption being that all of the facts provable under the issues, except as shown by such answers, are found in accord with the general verdict.    p. 558.

2.    PLEADING.—*Complaint.—Negligence.—How Characterized.*—A complaint, characterizing an act as "negligently" done, is sufficient as against a demurrer.    p. 559.

3.    RAILROADS.—*Street Crossings.—Signals.—Damnum absque injuria.*—Where plaintiff, a traveler on a city street, at the invitation of the railroad flagman, crosses in front of a freight-train standing in the yards, and the engine sounds two loud, shrill signal whistles to start, and plaintiff's ordinarily gentle horse takes fright thereat and injures the plaintiff, such injury is *damnum absque injuria.*    p. 560.

From Wabash Circuit Court; *H. B. Shively*, Special Judge.

Action by David Fike against the Lake Erie & Western Railroad Company. From a judgment on a general verdict for plaintiff for $500, defendant appeals. *Reversed.*

*John B. Cockrum* and *George Shirts,* for appellant.
*John F. Lawrence* and *David E. Rhoades,* for appellee.

Myers, P. J.—Appellee begun this action in the Miami Circuit Court against appellant to recover damages for personal injuries received at the crossing of Broadway street and appellant's railroad, in the city of Peru, Indiana. On change of venue the case was sent to the Wabash Circuit Court, and there tried by a jury, resulting in a verdict and judgment for appellee. Interrogatories were submitted to the jury, which, with their answers thereto, were returned with their general verdict.

The overruling of appellant's motion for judgment in its favor on the interrogatories and answers of the jury, notwithstanding the general verdict, is here assigned as error. After a careful examination of the record in this case, it seems to us the real question is presented by this assignment.

The facts in this case, as taken from the interrogatories and answers, may be stated as follows: On February 10, 1902, appellant was a duly organized railroad corporation owning and operating a line of railroad running through the city of Peru, Miami county, Indiana; that appellee was on said date residing near the town of Mexico, about four or five miles north of said city of Peru, and for thirty years continuously prior thereto had there resided; that appellee's usual course of travel to said city was along Broadway street in said city; that on said date the Wabash Railroad Company crossed Broadway street in said city with three main and two side-tracks, all running east and west, and appellant crossed said Broadway street with one track running east and west about sixty or seventy feet south of the south track of said Wabash Railroad Company; that between the tracks of the two railroad companies, and on the east side

of Broadway street, was a small park, and immediately east of the park a joint passenger station of such railroads was situated; that near the east side of Broadway street, and immediately north of appellant's track was a small house, occupied by a flagman in the employ of appellant; that between the tracks of said two railroad companies, about 150 feet west of the west side of Broadway street, was located appellant's freight station, and west and south thereof was appellant's freight yard, and beginning about twenty-five feet west of the west line of Broadway street a number of tracks lead off from appellant's track which crosses Broadway street to various places in appellant's freight yard; that on said date a freight-train, destined for points north of the city of Peru, was made up in appellant's said freight yard, to which was attached two locomotives in the form of what is commonly known as a "double header," and to reach its destination it was necessary for said freight-train to cross said Broadway street at the point where the accident occurred; that said freight-train in starting on its journey came within fifteen or twenty feet of the west side of said Broadway street on appellant's track and stopped, where it remained until the engineer on the leading engine received the signal from the conductor of said train to start; that the stop was made for the purpose of repairing a defect in the air-brake attachment on said train, and, when this repair was made, the conductor, who at that time was near the rear end of the train, signaled the engineer to start the train for its destination; that it was the duty of the engineer on the first or leading engine to receive and obey the signals of the conductor with reference to the starting of the train; that the engineer on the leading locomotive was in his proper place, leaning out of the window on the south side of the cab, looking west to get the signal from the conductor to start; that, on receiving the signal to start the train, it was the duty of the engineer of the leading locomotive to sound the whistle twice in succession, which meant "Off brakes,"

which was the proper and only notice, in the practical operation of freight-trains, to be given to the employes engaged in the management and handling of the train, and was necessary to be given for the safety of those so employed; that, in the proper handling of said train, and in obeying the orders of the conductor, it was necessary for the engineer to sound the whistle before looking toward said Broadway street crossing; that on said date, between 1 o'clock and 2 o'clock in the afternoon, while appellee was on his way to said city, in a sled drawn by a three-year-old horse, and on said Broadway street, and while said train and locomotives were standing as aforesaid, he stopped at a point just north of the tracks of the Wabash Railroad Company and north of appellant's track, which crossed said street, and there remained until signaled by appellant's flagman to proceed across said tracks; that, upon receiving the signal from said flagman, appellee started across said tracks along the east side of Broadway street, and when near or on the track of appellant, and without any warning or anything to indicate to him that appellant's engineer would sound the whistle, before he could get across said track, appellant's engineer on the leading engine, in response to the signal of the conductor, gave the signal "Off brakes," by sounding the whistle on the locomotive twice in succession, which frightened appellee's horse; that the width of Broadway street at the point crossed by appellant's tracks was seventy feet, and, at the time the whistle was sounded, appellee was about ninety feet east of said first locomotive; that said engineer on said· locomotive at the time of sounding said whistle had no knowledge that appellee was crossing or desired to cross said tracks, but had he looked he could have seen appellee at the time the whistle was sounded; that appellee at said time was the only traveler crossing said tracks; that the flagman at the time of giving the signal to appellee to cross the tracks, had no knowledge that the engineer would give the signal "Off brakes," and he had no knowledge when such freight-

train would move, nor was it his duty to give signals to the engineer of such freight-train with respect to the starting or stopping of the train, nor did the engineer have any knowledge that the flagman had signaled appellee to cross its tracks; that appellee had crossed the same tracks with the same horse at least a dozen times during the winter of 1901 and 1902, and was acquainted with the situation and location of the various tracks crossing Broadway street at the point where the injury occurred, and knew that trains frequently ran over said tracks; that appellee's horse was gentle, and had heard the whistle of locomotives prior to the day the injury occurred; that said leading locomotive could be seen 200 feet north of where it stood, and appellee, at the time of starting across the tracks, knew that appellant's locomotive was standing on its track near said Broadway street, and that, under all the circumstances, the signal given to appellee to cross the tracks at the time appeared to the flagman to be proper, and the engineer was in the usual discharge of his duties when he started the train and sounded said signal with the whistle. The whistling of the signal "Off brakes" was the only time the whistle was sounded at that time and place.

1. In passing upon the point now before us, we are not unmindful of the well-settled principle of law, that the general verdict covers all the issues in the case, and can not be overthrown by the answers to interrogatories, unless, as stated in *Chicago, etc., R. Co. v. Leachman* (1903), 161 Ind. 512, "after being reënforced by the assumed proof of all favorable facts provable under the issues, and all natural inferences arising from such facts, in its relation to such special findings, [it] is so incompatible and contradictory on some material point that both can not possibly be true." *Chicago, etc., R. Co. v. Stephenson* (1904), 33 Ind. App. 95.

Every reasonable presumption must be indulged in favor of the general verdict, which is supposed to embody the

jury's deductions and conclusions from all the facts presumably proved in the cause; yet these presumptions must be confined to, and the jury's range of facts supporting such verdict must be found within, the facts properly provable under the issues. One of the modes of testing the correctness of the general verdict is by the facts shown by answers to interrogatories. Therefore, if, when applying the facts so found by the jury to the facts which might have been proved under the issues, it clearly appears that the general verdict is based upon some other hypothesis or upon facts not within the issues, or the facts as shown by such answers are inconsistent and contradictory of a material fact which must have been found to support the general verdict, in either case such verdict must yield, and the answers to the interrogatories control. *Chicago, etc., R. Co.* v. *Leachman, supra; Cleveland, etc., R. Co.* v. *Heine* (1902), 28 Ind. App. 163; *Bedford Quarries Co.* v. *Thomas* (1902), 29 Ind. App. 85.

In the case at bar the gist of appellee's action as charged in his complaint, relative to the negligent acts of appellant causing the injury, may be stated in a quotation from the complaint as follows: "That after plaintiff had stopped, * * * said defendant carelessly and negligently, by his said flagman, beckoned to said plaintiff and notified him and directed him to drive on across said crossing in front of said engine; that plaintiff then and there, after being directed so to do, drove on toward said crossing; that, just as plaintiff's said horse was crossing said track of said defendant in front of said locomotive, said defendant carelessly, negligently and intentionally blew and sounded twice, loud and shrill, the whistle on said locomotive, and thereby caused plaintiff's horse to scare and take fright, and scared and frightened said horse, and caused him to run away and throw plaintiff out of his sled upon the ground," etc., describing plaintiff's injuries.

2. It has been held by our Supreme Court and by this

Court that a complaint characterizing an act as having been carelessly and negligently done is sufficient to withstand a demurrer, and that, under such averments, the facts constituting the negligence may be given in evidence. Under these decisions the complaint in the case at bar is sufficient to withstand a demurrer for want of facts. *Cleveland, etc., R. Co.* v. *Berry* (1899), 152 Ind. 607, 46 L. R. A. 33; *Rodgers* v. *Baltimore, etc., R. Co.* (1898), 150 Ind. 397; *Anderson* v. *Scholey* (1888), 114 Ind. 553; *Louisville, etc., R. Co.* v. *Jones* (1886), 108 Ind. 551; *Van Camp, etc., Iron Co.* v. *O'Brien* (1902), 28 Ind. App. 152; *Duffy* v. *Gleason* (1901), 26 Ind. App. 180.

3. Without repeating all the facts that are specially found by the jury, it appears that a freight-train belonging to appellant was, at the time of the accident, standing upon appellant's premises, and west of the street along which appellee was traveling; that to this train of freight-cars were attached two live locomotives headed to the east, and each manned by an engineer and fireman. The persons in charge of the train were engaged in putting it in condition to move. Appellee was driving a gentle horse, and was acquainted with the crossing and the conditions then and there existing, and was bound to know that it was a place of danger; that the tracks could be crossed at a distance of ninety feet from the leading locomotive. Under these conditions, which were as open and visible to the appellee as to the flagman, the flagman beckoned appellee to proceed across the tracks. This act upon the part of the flagman was an assurance, upon which appellee had a right to rely, that he would incur no danger from approaching trains, and, in our opinion, it is the limit of the construction to be placed upon the acts of the flagman. The jury specially find that when appellee was near or on appellant's track the whistle on the front locomotive was, by its engineer, twice sounded for the purpose of giving notice that the train was about to start, and that such sounding was

necessary for the safety of those engaged in the management and handling of such train. True, the jury find by their general verdict that the whistling was negligently loud and shrill, but when they specially find the purpose of the whistling to be a warning for the safety of those employes about the train, and the only notice to be given to such employes of the intention to start the train, it seems to us that anything short of a decisive and distinct sounding of the whistle, which might be characterized as loud and shrill, would be a dereliction of duty on the part of the engineer toward those so employed, amounting to but little less than criminal negligence, when considered in connection with the fact that the business of handling trains, at best, and with all the safeguards which may be thrown around those thus employed, is exceedingly hazardous.

The facts as specially found by the jury clearly show that appellant's employes and servants did not do any needless or unnecessary act while in the performance of their duty and work about which they were then and there engaged, but that which was done was performed in the common and usual way of conducting such business. Appellant had the right to conduct its business and handle its train at that point in the usual and ordinary way, and, from the facts and circumstances as then appearing, it was not bound to wait until the crossing was clear before giving notice of its intention to start its train. Appellant's train was at a place where it had a right to be, and any noise necessary in the proper handling of such train, although such noise be the sounding of the whistle, and at a place of danger, and where horses were likely to be frightened thereby, under the circumstances here appearing, was not actionable negligence. *Lake Shore, etc., R. Co.* v. *Butts* (1902), 28 Ind. App. 289.

When appellee started across appellant's tracks in front of its engine, under the facts as specially found by the

jury, he incurred the risk of his horse's frightening at the noises which might be made in the ordinary handling of such train, as well as the consequences.    *Louisville, etc., R. Co.* v. *Schmidt* (1893), 134 Ind. 16.    In the case last cited the court said:    "They [the railroads] have 'necessarily the right to make all reasonable and usual noise incident thereto, whether occasioned by the escape of steam, rattling of cars, or other causes,' and we may add that persons whose duties call them near a railway must be presumed to know of this right and to act, for their own safety, with reference to such right."    Therefore, in this particular case the facts found in the answers to interrogatories and the general verdict are in irreconcilable conflict, and the special findings must control.    Because of this conflict the judgment of the lower court must be reversed.

Judgment reversed, with instructions to the trial court to render judgment in appellant's favor on the answers to the interrogatories.