INDIANA UNION TRACTION COMPANY v. SCRIBNER, ADMINISTRATOR.

[No. 6,781. Filed February 17, 1911. Rehearing denied May 17, 1911.]

1. APPEAL.—Briefs.—Waiver.—Alleged errors not discussed are waived. p. 626.

2. TRIAL.—Verdict.—Interrogatories.—Answers to interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith. p. 628.

3. TRIAL.—Verdict.—Interrogatories.—Presumptions. — Courts indulge all reasonable presumptions in favor of the general verdict but none in favor of the answers to interrogatories to the jury. p. 628.

4. TRIAL.—Verdict.—Interrogatories.—In order that answers to the interrogatories to the jury shall control the general verdict, the antagonism must be apparent upon the face of the record and be incapable of removal by any admissible evidence. p. 628.

5. TRIAL.—Verdict.—Interrogatories.—If the answers to interrogatories to the jury exclude every conclusion authorizing a recovery in behalf of the party securing the general verdict, judgment should be rendered on the answers to the interrogatories, regardless of the general verdict. p. 628.

6. CARRIERS.—Interurban Railroads.—Chartering Steamboats.—Liability.—Officers.—Ratification.—Interrogatories.—In an action by the administrator of a passenger against an interurban railroad company for negligence in operating a steamboat alleged to have been run in connection with such company's cars, thereby causing the death of plaintiff's decedent, answers to interrogatories that there was no direct evidence as to the time that defendant's board of directors authorized the purchase or operation of the boat, that such board authorized the purchase of the boat by the company's general superintendent of transportation, that such board afterwards rebuilt it, and transferred the company's train servants to service on such boat and paid them for such service, that the company's servants were in charge of the boat at the time of the decedent's death, that the fare paid was delivered, with the car fare, to defendant and accepted by it, do not overthrow a general verdict for the plaintiff. pp. 629, 631.

7. PRINCIPAL AND AGENT.—Ratification.—Interurban Railroads.—Steamboat Excursions.—Accepting Fares.—The acceptance by an interurban railroad company of fares on a steamboat excursion run in connection with such company's business, estops such com-

pany from denying liability for negligence committed in the operation of such boat, the officers of the company being presumed to be acquainted with its business, and to know the source of its revenues. p. 629.

8. PRINCIPAL AND AGENT.—*Ratification.*—Ratification may be shown by the conduct of a corporation as well as by a vote of its directors, and such conduct may be shown by an affirmation of, or by passive acquiescence in, the act done, such ratification having the same effect as the antecedent grant of authority to do the act. p. 630.

9. PRINCIPAL AND AGENT.—*Ratification.*—*Corporations.*—*Estoppel.* —A corporation is estopped to question the authority of an act done in its apparent behalf where its officers know thereof and accept and retain the benefit thereof, such corporation being required to affirm or disaffirm the entire transaction. p. 630.

10. EVIDENCE.—*Failure of Party to Produce.*—*Interurban Railroads.*—*Control of Steamboat.*—The failure of an interurban railroad company, having the requisite evidence, to supply definite information as to the ownership and control of the steamboat in question, authorizes the jury to infer that if such evidence were produced it would be unfavorable to such company. pp. 631, 637.

11. PRINCIPAL AND AGENT.—*Corporations.*—*Officers.*—*Notice.*—Notice to the officer or agent of a corporation having charge of the matter in question, is notice to the corporation. p. 631.

12. EVIDENCE.—*Declarations of Agent.*—The declarations of an agent are admissible against his principal only when made as to a business matter within the scope of his agency and which is being transacted at the time. p. 635.

13. EVIDENCE.—*Agency.*—*Declarations of Agent.*—*Order of Proof.* —*Trial.*—Before the declarations of an agent are admitted, proof of his agency should be given, but if proof of the agency be supplied later the error in admitting the declarations first is harmless. p. 635.

14. CARRIERS.—*Interurban Railroads.*—*Evidence.*—*Declarations of Superintendent of Transportation.*—*Operation of Steamboat.*— The declarations of the superintendent of transportation of an interurban railroad company as to the company's operation of an excursion boat, through the negligent operation of which plaintiff's decedent was drowned, are admissible against the company. p. 636.

15. CARRIERS.—*Interurban Railroads.*—*Evidence.*—*Declarations of Superintendent.*—*Declarations of Third Persons.*—In an action by an administrator for the death of his decedent caused by the alleged negligent operation of an excursion boat, run in connection with an amusement park being conducted by defendant interurban railroad company, declarations of the manager of such

park to the person in charge of an excursion to the effect that such excursion boat was operated by the defendant interurban company and that the superintendent thereof was the one with whom to make arrangements for a commission on the proceeds of an excursion on such boat, are harmless, where such declarations were merely preliminary to the making of such arrangements with such superintendent. p. 636.

16. WITNESSES.—*Identity.—Declarations over Telephone.—Interurban Railroads.—Superintendent of Transportation.*—Evidence showing that the manager of a park agreed with the manager of an excursion to make arrangements for a commission on the proceeds of an excursion boat with the superintendent of transportation of defendant interurban railroad company, that he called such superintendent over the telephone and conversed with him on the subject, that the manager of the excursion was called to the telephone and spoke concerning such commission, that the park manager was recalled and he was instructed to arrange for the commission, sufficiently identifies such superintendent. p. 636.

17. PRINCIPAL AND AGENT.—*Agency.—Interurban Railroads.—Excursion Boats.*—In an action by an administrator for the death of his decedent caused by the alleged negligence of defendant interurban railroad company in operating an excursion boat, evidence that the superintendent of transportation of such interurban railroad company purchased such boat, that the company's board of directors rebuilt it and placed the company's servants in charge thereof, shows an agency sufficient to warrant the admission of his declarations concerning such boat and the proceeds therefrom, regardless of his authority to run excursions for the company. p. 636.

18. CARRIERS.—*Interurban Railroads.—Excursion Boats.—Operation.—Notice.—Evidence.*—Evidence that defendant interurban company's servants operated an excursion boat a few days previous to the time in question and that the company received the fares collected, is admissible in an action for the drowning of a passenger on a subsequent excursion, as tending to show notice to the company of the operation of such boat by its employes. p. 637.

19. EVIDENCE.—*Failure of Party to Produce Proof.—Effect.*—The rule that where a party fails to produce evidence peculiarly within its control, the presumption is that such proof, if produced, would be unfavorable, does not dispense with the rule requiring the plaintiff to establish his case, but under such circumstances, if there is some evidence tending to establish the fact, it will suffice. p. 638.

20. COURTS. — *Objects. — Formalities.* — Courts seek the truth through the forms and by the rules of law. p. 638.

Indiana Union Traction Co. *v.* Scribner—47 Ind. App. 621.

21. EVIDENCE.—*Declarations as to Operation of Boat.*—*Interurban Railroads.*—*Harmless Error.*—In an action by an administrator for the alleged negligence of defendant interurban railroad company in operating an excursion boat, whereby plaintiff's decedent was drowned, evidence of a telephonic conversation by a witness with an employe of defendant at defendant's office concerning assistance in finding decedent's body, is harmless, where such employe, pursuant to promise, went to the scene and so assisted, and where the answers to the interrogatories showed that the jury reached its conclusion from other evidence that defendant had control of such boat. p. 638.

22. APPEAL.—*Harmless Error.*—*Erroneous Admission of Cumulative Evidence.*—The erroneous admission of evidence which is merely cumulative does not constitute reversible error. p. 639.

23. EVIDENCE.—*Bailing Boat after Accident.*—*Manner of Boat's Leakage.*—*Interurban Railroads.*—*Carriers.*—In an action by the administrator of a decedent who was drowned by the alleged negligence of defendant interurban railroad company in operating an excursion boat, evidence as to the bailing of the boat after the accident and as to the way the water entered the boat, is competent though its probative value may not be great, the condition of the boat shortly after the accident tending to show its condition at the time of such accident. p. 639.

24. EVIDENCE.— *Photographs.— Newspaper Cuts.— Identification.*— Photographs and newspaper cuts, when properly identified by the person taking or making them, or by others familiar with the scenes, are admissible in evidence. p. 639.

25. CARRIERS.—*Steamboats.*—*Inspection.*—*Instructions.*—In an action for the drowning of a passenger on an excursion boat, an instruction that a carrier of passengers for hire is required to test its machinery and appliances and to examine them from time to time in order to know whether they are deteriorating by wear and tear, is correct, and does not mislead the jury, where it was further instructed that the carrier is not an insurer of its passengers. p. 640.

26. CARRIERS. — *Steamboats. — Drowning Passenger. — Burden of Proof.*—*Presumptions.*—*Instructions.*—An instruction that where a passenger, without his fault, is thrown from a boat and is drowned because of the sinking of the boat, or breaking of its parts, the presumption is that the person operating the boat is guilty of negligence, unless the evidence shows there was none, is correct, but this rule does not change the burden of proof. p. 640.

27. CARRIERS.—*Injuries to Passengers.*—*Ultra Vires Acts.*—*Instructions.*—An instruction that where a passenger is injured by the negligence of the carrier, such carrier cannot be relieved

from liability on the ground that the injury occurred while the carrier was doing business not authorized by its charter, is correct. p. 641.

28. CARRIERS.—*Passengers.*—*Who are.*—*Instructions.*—An instruction outlining to the jury the conditions under which plaintiff's decedent might be considered a passenger of defendant, and leaving the jury to determine that fact from the evidence, and stating that if such facts were proved the defendant was required to use due care in carrying decedent, is not objectionable. p. 642.

29. TRIAL.—*Instructions.*—*Duplication.*—It is not erroneous to refuse to duplicate instructions. p. 642.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Nelson F. Scribner, as administrator of the estate of Lora H. Whitson, deceased, against the Indiana Union Traction Company. From a judgment on a verdict for $5,000 for plaintiff, defendant appeals. *Affirmed.*

*J. A. VanOsdol, Miller, Shirley & Miller* and *Kane & Kane,* for appellant.

*S. A. Hays* and *Shirts & Fertig,* for appellee.

FELT, J.—Action by Nelson F. Scribner, as administrator of the estate of Lora H. Whitson, deceased, against appellant, Indiana Union Traction Company, for damages resulting from the alleged negligence of appellant.

The action was originally filed in Marion county, and upon change of venue was sent to Hancock county, and from there was venued to the Hamilton Circuit Court, where, upon issues formed by a general denial to the complaint, after trial and verdict by jury, judgment was rendered for appellee in the sum of $5,000, from which this appeal is prayed.

The following errors are assigned: (1) The complaint does not state facts sufficient to constitute a cause of action; (2) error of the Marion Circuit Court in overruling the demurrer to the complaint; (3) error of the Hamilton Circuit Court in overruling appellant's motion for judgment on the answers to the interrogatories, notwithstand-

ing the general verdict; (4) error in overruling appellant's motion for a new trial.

The first and second assignments of error are not discussed by appellant's counsel in their brief, and are therefore waived.

1.     The record discloses that on August 7, 1905, appellee's decedent, and other excursionists from the city of Indianapolis, took passage over the electric railway line of appellant to Broad Ripple, Indiana; that appellant owned and controlled a certain boat—named Sunshine—which it operated on White river as an inducement to excursionists, and on said date undertook to carry decedent and about one hundred seventy-five other persons on said boat from Broad Ripple up White river a distance of about three miles and return; that decedent paid his passage thereon, and while a passenger upon said boat it became disabled and sank in the water, resulting in his death by drowning.

It was alleged that the boat was old, rotten, unsafe and incapable of carrying the number of passengers taken aboard on the fatal trip; that it was negligently and carelessly managed by the servants and employes of appellant, and became uncontrollable; that the hull of the boat became filled with water, the deck was broken off, and decedent was thereby thrown into the water; that decedent was about twenty-nine years of age, in good health, earning from $800 to $1,000 a year; that he left surviving him a widow and also two children, six and eight years of age, respectively, who were dependent upon him.

Appellant denied ownership or control of the vessel, and sought to show that the accident was due to the conduct of the passengers in rushing to the side of the upper deck, causing the vessel to tip to one side, by reason of which a chain was displaced upon the sprocket wheel, leaving the boat without motive power, and causing it to capsize.

Appellant has not set out the answers to the interrogatories in its brief, but appellee has supplied the omission.

The motion for a new trial alleges that the verdict is not sustained by the evidence, is contrary to law, and that the damages assessed are excessive. Other alleged errors are based upon the admission and exclusion of evidence, the giving of certain instructions and the refusal to give instructions requested by appellant.

Appellant insists that the answers to the interrogatories show a failure of proof to establish that appellant either owned or was operating the boat at the time of the accident.

The answers to the interrogatories state, in substance, that there was no direct evidence as to the time appellant's board of directors authorized the purchase or operation of the boat. They show, however, that the board authorized the purchase of the boat, by its general superintendent of transportation, one Baldwin, and afterwards rebuilt it, and transferred its employes from service upon its cars on the Broad Ripple line to service upon the boat, and continued them upon the pay-roll of the company without reemployment or change of contract; that at the time of the accident employes of appellant were in charge of said boat as follows: Crockett as engineer and captain, Metsker as pilot, Davis as purser and McMahan as local superintendent of transportation; that the other men were employed by McMahan with the approval of Baldwin, appellant's general superintendent of transportation; that there was no direct testimony that the directors knew that said employes and officers were engaged in operating said boat at the time of the accident, but they did have notice through said official, Baldwin, that such was the case; that all the money earned by operating the boat, both before and on the day of the accident, and the money earned by operating appellant's cars on the Broad Ripple line, was, by its

employe, placed in the same bag and deposited together in the bank, to the credit of appellant; that the directors of appellant, in the spring of 1905, and thereafter to the time of the accident, knew that its employes were operating said boat, and both before and at the time of said accident the persons so operating said boat represented to the public that they were operating it on behalf of appellant, and such representations were also made by the employes and officers of appellant operating cars on its line passing through Broad Ripple; that, at the time of the accident, Baldwin, the general superintendent of transportation, knew that the boat upon which appellee's decedent took passage was being operated for and on behalf of appellant by its employes aforesaid. The evidence further shows that the employes on said boat were paid by appellant, and that the captain of the boat wore the uniform of appellant.

2. Answers to interrogatories and the general verdict must be in irreconcilable conflict, before the former will control the latter.

3. Courts indulge every reasonable presumption in favor of the general verdict, and nothing is presumed in favor of the answers to interrogatories.

4. The antagonism between the general verdict and the answers to interrogatories must be apparent upon the face of the record, beyond the possibility of removal by any evidence legitimately admissible under the issues.

5. However, if the answers to the interrogatories exclude every conclusion that will authorize a recovery by the party in whose favor the general verdict is rendered, then judgment should not be rendered upon the general verdict, but upon the answers to the interrogatories.

Applying the well-established rules before stated to the facts shown by the answers to the interrogatories, we think

it a reasonable presumption, fully warranted by the
6. facts shown by the answers to the interrogatories,
that the directors and officers of appellant had such
knowledge and information about the operation of the boat
in question by its employes before and at the time of the
accident, as to amount at least to a ratification of their
acts in so doing. *Flynn* v. *Des Moines, etc., R. Co.* (1884),
63 Iowa 490, 19 N. W. 312; *Kneeland* v. *Gilman* (1869),
24 Wis. 39; *Bennett* v. *Millville Improv. Co.* (1902), 67
N. J. L. 320, 51 Atl. 706.

The finding that there was no direct evidence showing
that appellant owned the boat, or that its board of direct-
ors authorized its purchase or operation, is by no means
the equivalent of saying that there is no legitimate evi-
dence from which both ownership and control may have
been rightfully found by the jury. As the jury had some
evidence of the purchase of the boat by the general super-
intendent of transportation of appellant, that it was re-
built, operated and controlled by employes of appellant,
and that the earnings of the boat for some time before the
accident were received and retained by appellant, it had
the right to draw from such facts, which the evidence
tended to prove, any inference or conclusion that might
reasonably be drawn therefrom. It is affirmatively shown
that the money earned from operating the boat before and
at the time of the accident was received and retained by
appellant.

Officers of a corporation are presumed to do their duty
and to be acquainted with the business of their company,
and in the light of this presumption the jury was
7. fully warranted in concluding that they knew the
source of the revenue received by appellant. If
they knew the source of the money and retained it, this
would certainly amount to a ratification of the means em-
ployed to procure it, and is in the nature of an estoppel,
operating against the company when it seeks to repudiate

the authority by which the boat was controlled and operated in its behalf. 2 Thompson, Corporations (2d ed.) §§1960-1994; *Pittsburgh, etc., R. Co.* v. *Keokuk, etc., Bridge Co.* (1889), 131 U. S. 371, 385, 9 Sup. Ct. 770, 33 L. Ed. 157; *Fidelity Trust Co.* v. *Louisville Gas Co.* (1904), 118 Ky. 588, 81 S. W. 927, 111 Am. St. 302-325, notes and cases cited.

It has been held in such situation that a ratification may be shown by conduct, and that no formal vote or resolution by the board of directors is necessary to that end; 8. that such conduct may consist either in affirmation or in a failure to act, that is, in passive acquiescence; that it may be the conduct either of a managing agent having authority, or of the board of directors, and that when a ratification has thus taken place it is equivalent to antecedent authority and estops the corporation from subsequently disavowing the act so ratified. 2 Thompson, Corporations (2d ed.) §2015 and authorities cited; *Everett* v. *United States* (1837), 6 Port. (Ala.) 166, 30 Am. Dec. 584.

Where the officers of a corporation have knowledge of a transaction, and the company receives and retains the benefit of it without objection, the unauthorized act is 9. thereby ratified, and the corporation is estopped afterwards to repudiate it. Under such circumstances it is called upon to exercise its option, and may affirm or disaffirm, in whole but not in part. It cannot disaffirm so much of the unauthorized act as is onerous while retaining that which benefits. 2 Thompson, Corporations (2d ed.) §§2020, 2030, 2035 and authorities cited; *White Water Valley Canal Co.* v. *Hawkins* (1853), 4 Ind. 474; *Marion Trust Co.* v. *Crescent Loan, etc., Co.* (1901), 27 Ind. App. 451, 87 Am. St. 257; *Peck* v. *Dorman & Wright Co.* (1890), 57 Hun 343, 10 N. Y. Supp. 401; *Perkins* v. *Portland, etc., R. Co.* (1859), 47 Me. 573, 74 Am. Dec. 507; *Commonwealth* v. *Worcester Turnpike Corp.* (1825), 3

Pick. (Mass.) 327; *Love* v. *Export Storage Co.* (1906), 143 Fed. 1, 74 C. C. A. 155.

Furthermore, the questions of ownership, control and operation of the boat were so related to appellant that it was within its power to supply definite information on the subject. Where a person has it within his power to produce witnesses, presumably favorably disposed toward him, to explain a transaction or answer a controverted question, and fails so to do, the presumption is that the testimony, if produced, would be unfavorable to him. The situation of appellant makes this rule applicable here, and tends strongly to support the finding of the jury. *Lawrence Bank, etc.,* v. *Raney & Berger Iron Co.* (1893), 77 Md. 321, 26 Atl. 119; *Lee* v. *State* (1901), 156 Ind. 541; *Wimer* v. *Smith* (1892), 22 Ore. 469, 30 Pac. 416; *Central Stock, etc., Exch.* v. *Board of Trade, etc.* (1902), 196 Ill. 396, 63 N. E. 740.

The answers to the interrogatories are not in serious conflict with the general verdict, but, on the whole, strongly support it. We find no failure of proof tending to establish each of the material facts in issue.

The answers to the interrogatories show that Baldwin purchased the boat by authority of appellant's directors; that he rebuilt it at appellant's expense, and that appellant knew of and authorized its operation by its employes.

Notice to the agent of a corporation, relating to any matter of which he has the control and management, is notice to the corporation. *Indiana, etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647, 660; *Pittsburgh, etc., R. Co.* v. *Ruby* (1871), 38 Ind. 294, 10 Am. Rep. 111.

The motion for judgment on the interrogatories was properly overruled. *Lake Erie, etc., R. Co.* v. *Fike* (1905), 35 Ind. App. 554; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662; *Fort Wayne Traction Co.* v. *Hardendorf* (1905), 164 Ind. 403; *Gleason* v. *McGinnis* (1902), 30 Ind.

App. 4; *Heintz* v. *Mueller* (1901), 27 Ind. App. 42; *Williams* v. *Chapman* (1903), 160 Ind. 130; *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462; *LaFollette* v. *Higgins* (1891), 129 Ind. 412.

The motion for a new trial was based on numerous alleged errors in ruling upon the admission of evidence. Several objections are based upon the testimony of Fred Alexander. His testimony showed that on July 20, before the fatality to appellee's decedent on August 7, 1905, the witness, as captain of the Uniform Rank Knights of Pythias, was chairman of a committee having charge of an excursion from Noblesville to Broad Ripple park. He testified that at Broad Ripple he had a conversation with W. H. Labb, who had local control of the amusements, on the subject of the Knights' sharing in the proceeds of the amusements for the day, including the earnings of the boat Sunshine. The witness was asked: "What is the fact as to making arrangements with Labb for the Knights to share in the proceeds of the amusements for that day?" Appellant objected, on the ground that it was immaterial what arrangements were made with the Knights to share in the proceeds, which objection was overruled, and the witness answered: "Our committee made arrangements with Labb for our organization to receive a certain per cent of all moneys taken in on the different amusements and concessions of the park." "Q. When you arrived at Broad Ripple on the excursion on that day, what did you learn as to the steamer Sunshine's having been included in that arrangement, or otherwise?" Objected to on the ground that it was hearsay, that it was not shown that any one connected with the excursion had any relation to appellant or any authority to act for it. The objection was overruled. "A. When our excursion of 700 people arrived on the grounds I went directly to Labb, to make a contract with him to place members of our company in front of each of the concessions to assist in all the business of the

concessions." "Q. What arrangements did you make with Labb with reference to the boat Sunshine?" Objection, that it called for hearsay evidence, overruled. "A. Labb agreed to make arrangements with the representative of the Union Traction Company, by which we were to receive a percentage of the fares paid on the boat. We were informed that it would not give us that per cent."

After further questions, showing that Labb called Baldwin up by telephone at the office of appellant in Anderson, Indiana, the witness was asked: "What did Labb say to Baldwin?" Appellant objected, on the ground that there was no evidence that he was talking to Baldwin, or that either Baldwin or Labb represented appellant in the management of the boat, or that the company had authorized any one to engage in the excursion business, using the boat Sunshine at the time mentioned in the complaint, or at the time mentioned by the witness. The court overruled the objection, and the witness answered: "Labb told Baldwin that we had 700 people down there, and that we were going to boycott the boat and not allow our people to ride on the boat unless we got our percentage out of it. Then Labb called me to the telephone and I talked to Baldwin." "Q. What did you say to him?" Objection, the same as last before stated, overruled. "A. I told Baldwin there was a misunderstanding regarding our commission on the boat; that we were going to boycott the steamer Sunshine unless arrangements were made by which we would get our percentage; that we would not allow our people to ride on the boat. Then Baldwin called to the telephone this other gentleman who was with me, whose name I did not know, and talked to him. Q. What did Baldwin say in answer to him, if anything? A. Well, he called him to the telephone, and after a conversation, of which I could hear only one side, this gentleman turned round and said to me: 'We have to give the Indiana Union Traction Company forty per cent of the gross receipts of the boat, and I am

instructed by Baldwin that twenty per cent will go to you.' "

Thomas W. Pearson testified, on direct examination, over appellant's objection, about his efforts to communicate with appellant over the telephone several hours after the accident, and his conversation by telephone with J. S. Starkey, as follows: "Q. Did it give the name of the office where the number was located? A. Yes, said Indiana Union Traction office. Q. How many efforts did you make to call up the office before you got an answer from any one purporting to represent the company? A. Three times. Q. Whom did you get finally? A. J. S. Starkey. Q. Did you have a conversation with Mr. Starkey? A. Yes, sir, I did. Q. Tell the jury what he said to you and you said to him in regard to the boat." To this question appellant interposed the objection that it was not shown that Starkey had any authority to speak for appellant, and that any conversation could not tend to show that the Indiana Union Traction Company was engaged in operating the boat Sunshine on the day of the accident to appellee's decedent, and because the testimony was hearsay, and there was not sufficient identification of the person alleged to be talking for appellant. The objection was overruled, and the witness answered: "I asked him if his company owned the boat Sunshine, and told him that there had been a body lost, and I thought it ought to furnish some assistance, and he wanted to know what assistance I wanted. I told him ropes, cant-hooks, an ax, saw, and two or three men, if possible, and a diver. He said he would come out. For me to meet him at the car. And I said to him: 'How will I know you?' and he said: 'You will know me all right; I have a mole either on or near my nose.' I went to the cars every thirty minutes, but no one came." Appellant moved to strike out the answer, for the reasons stated in the objection, which motion was overruled. "Q. Did Starkey come out at all? A. Yes. Q. Did he assist in any

way? A. Yes, he helped to carry the body to the boat-house. Q. What time was that? A. About 3 o'clock. Q. What did Starkey say to you when he came out? A. Told me who he was. Q. What is the fact as to whether you found the mole on his face as he described it? A. I think I did.''

Further objection was made to the testimony of William Bacon, on the subject of bailing out water from the hull of the vessel after the accident, and to the testimony of Sam Jones, on the subject of how the water got into the boat.

Appellee offered in evidence some photographs of the boat taken after the accident and after a part of the boat had been moved across the river, also a newspaper cut showing the condition of the boat shortly after the accident. All of which were admitted over appellant's objections.

One of the objections urged to the testimony of Alexander and others was that the persons communicated with were not shown to have authority to represent or speak for appellant.

12. The general rule is that the declarations, admissions or acts of an agent are evidence against his principal, only when they are made as to a business matter within the scope of his agency, and which is being transacted at the time.

13. The rule also requires the agency to be proved before the declarations of the agent are admissible, but if, after the declarations have been received in evidence, the agency is sufficiently proved, the error becomes harmless. In such case it is, in effect, the order of proof, and not the proof itself, that is subject to criticism. *Rowell* v. *Klein* (1873), 44 Ind. 290.

This rule is applicable here, for there was evidence show-, ing the relation of Baldwin to the appellant at the time and before the accident sufficient to admit proof on the

theory that he had authority to represent the company. Indeed, his position was shown to be such as to give him a wide range of authority for appellant on all matters of transportation and in relation to the boat Sunshine.

The conversations of the witness Alexander with W. H. Labb were, in their nature, preliminary to the conversations of both Alexander and Labb over the telephone with Baldwin, and were not objectionable; but even if objectionable as hearsay, certainly were harmless. The objection that it was immaterial what arrangements were made about the use of the boat, and the proceeds from its use, with other persons and at another time, was not made to the questions calling for the conversation over the telephone with Baldwin, but to a previous question asked Alexander, calling for the fact of making arrangements with Labb for the Knights to share in the proceeds of the amusements on July 20, 1905.

We have held that the objection to the showing of the agency of Baldwin is not well taken. The objection to his identity cannot be sustained, in view of the evidence showing how and where he was called to talk over the telephone, his relations to appellant, and the particular business inquired about. The further objection that there was no showing that Baldwin or any one else had authority to engage in the excursion business for appellant, at the time of the accident or at the time mentioned by the witness, is not tenable. The evidence of Baldwin's agency was sufficient to warrant the admission of the conversation with him about the boat and the proceeds from its use, independent of what may or may not have been proved about authority to run excursions.

It will be observed that no objection is urged to the conversation over the telephone between Labb, Alexander and

Baldwin, on the ground that the conversation related to another time and a different transaction than that under investigation at the trial. But even if such objections had been urged, we doubt if they could be sustained, as the proof showed the transaction inquired about occurred only seventeen days before the fatality now under consideration, and that the same employes were then operating the boat, and receiving the proceeds from its use for appellant, as on August 7, when the boat capsized and sank.

There are numerous instances where similar or collateral acts and transactions may be given in evidence as tending to show notice, knowledge and the like. 1 Wigmore, Evidence §§301, 302; 1 Elliott, Evidence §§165, 175, 185; *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98; *Pittsburgh, etc., R. Co.* v. *Ruby* (1871), 38 Ind. 294, 10 Am. Rep. 111.

The tendency of Alexander's testimony, giving the conversation with Baldwin, was to show that appellant controlled and operated the boat. If it was a fact that appellant operated and controlled the boat on July 20, and did not do so on August 7, or if it at no time operated and controlled it, or if Baldwin and Starkey were not agents of appellant, or were not talked to over the telephone, as claimed by the witnesses, appellant had ample means and opportunity of enlightening the jury on these subjects, by calling Baldwin and Starkey as witnesses, and by bringing in its directors and officers to disprove such claims.

This, appellant failed to do. Having power and opportunity to produce the witnesses, presumably favorable to it, to explain the situation or disprove the testimony offered to show its control and operation of the boat, its failure to do so raises the presumption that the testimony, if produced, would have been unfavorable to appellant. *Yula*

v. *New York, etc., R. Co.* (1902), 78 N. Y. Supp. 770, 39 Misc. 59; *Lee* v. *State, supra;* 16 Cyc. 1062-1064, and cases cited.

This doctrine does not change the rule requiring proof of material facts; but where there is some proof tending to establish such facts, it is a reasonable and salutary rule that may be considered in weighing the testimony. It is peculiarly applicable to corporations that of necessity transact business through agents and officers, who are naturally favorable to them, and may, by a policy of evasion or omission, seek to win by the weakness and limitations of their adversaries. This is their legal right, and complaint need not be made that corporations resort to such policies. But, on the other hand, courts are seeking for the truth through the forms and by the rules of law, and parties litigant cannot complain of the reasonable application of any rule of law that aids the court in attaining the end in view.

What we have said about the objections to the testimony of Alexander is, in the main, applicable to the testimony of Pearson. He claimed that his conversation over the telephone with J. S. Starkey, in the office of appellant and shortly after the accident, was confirmed by subsequent personal conversations, and related to appellant's furnishing assistance to recover decedent's body, and to his coming to Broad Ripple to assist in that work.

Considering the other testimony on the subject of the control and management of the boat, this evidence was harmless, for it was only remotely, if at all, connected with that subject, and the other parts of the conversation could not in any way have influenced the jury.

The answers to the interrogatories show conclusively that the jury reached its conclusion on the subject of the control and management of the boat from the other evidence on the subject, and confirm the view that this evidence did not harm appellant.

Furthermore, where there is material competent evidence to prove a fact, the admission of incompetent and immaterial evidence, tending to prove such fact, is not 22. reversible error. *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 561; *Snell* v. *Maddux* (1898), 20 Ind. App. 172; *Hauck* v. *Mishawaka, etc., Mfg. Co.* (1901), 26 Ind. App. 513; *Naugle* v. *State, ex rel.* (1885), 101 Ind. 284.

The objections to the testimony of the witnesses Bacon and Jones go rather to the weight than to the competency of the evidence. The changed conditions and the 23. time of their observations were not such as to make their evidence inadmissible. The conditions shortly after the accident afforded some evidence of the conditions at the time it occurred. *Hopkins* v. *Boyd* (1897), 18 Ind. App. 63.

The objections to the admissibility of exhibits E, 24. F and G, which were photographs, and of H, which was a newspaper cut, showing the boat at the time and shortly after the accident, cannot be sustained.

Photographs and other representations are admissible in evidence, when shown to be reasonably accurate representations of the place, thing or injury under investigation. The preliminary proof may be furnished by persons other than those who made the representation; but before admitting a newspaper cut in evidence, the trial court, by careful inquiry, should be satisfied as to its identity, and that it is a fair and reasonably accurate representation of the object or subject under investigation.

In this case both the newspaper cut and the photographs gave views of the boat shortly after the accident, and the proof furnished by the cut was, in a measure, cumulative of that made by the photographs, and it is apparent appellant was not harmed by its introduction. *City of Huntington* v. *Lusch* (1904), 33 Ind. App. 476; 9 Ency. Ev. 776, 777; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind.

App. 172; *Huntington Light, etc., Co.* v. *Beaver* (1905), 37 Ind. App. 4; *Keyes* v. *State* (1890), 122 Ind. 527; *Douglass* v. *State* (1897), 18 Ind. App. 289; *Miller* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 97; *DeForge* v. *New York, etc., R. Co.* (1901), 178 Mass. 59.

Appellant complains of the giving of certain instructions by the court at the request of appellee, and especially of four and nine, which are as follows: "(4) The law not only requires the carrier of passengers thoroughly to examine and test its vehicles, machinery and all parts and appliances thereof used in transporting passengers, but such carrier is also required further thoroughly to examine said vehicle and machinery from time to time thereafter in order to know whether such vehicles and machinery are deteriorating by wear and tear." "(9) When the fact has been established that a passenger on a boat, while being carried as a passenger for hire, has been thrown into the water and drowned, without his fault, by the sinking of the boat or the breaking down of the parts thereof, the law will presume negligence on the part of the persons operating the boat, unless the evidence shows there was none."

Instruction four is not objectionable for the reasons urged. It correctly states the law applicable to the facts of this case. The court in numerous instructions told the jury that appellant was not an insurer of its passengers. *Louisville, etc., R. Co.* v. *Snyder* (1889), 117 Ind. 435, 437, 3 L. R. A. 434, 10 Am. St. 60; *Cincinnati, etc., R. Co.* v. *McMullen* (1889), 117 Ind. 439, 10 Am. St. 67.

Instruction nine applied to the facts of this particular case a well-recognized rule of law. It was not, as appellant contends, a statement that every accident to a vehicle carrying passengers gives rise to the presumption of negligence in favor of the injured passenger.

In the case of *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74, 95, our Supreme Court, in speaking of this rule, said: "While the burden is upon the passenger suing to maintain the affirmative of the issue, still, under such circumstances, the mere happening of the accident is at least *prima facie* evidence of the negligence upon the part of the company or carrier, and it will be incumbent upon the latter to produce evidence which will excuse the *prima facie* failure of duty on its part; or, in other words, it has the burden of proving, in order to rebut the presumption of negligence, under the circumstances, that the accident could not have been avoided by the exercise of the highest practical care and diligence."

This rule does not change the general burden of proof, but simply provides that when a passenger is aboard a vehicle over which he has no control, and is injured, without any fault of his own, by reason of defective and insufficient means of transportation, the happening of the accident resulting in an injury, when proved, amounts to *prima facie* evidence of negligence on the part of the carrier, and makes it incumbent upon it to produce evidence to overcome the *prima facie* case thus established. *Pittsburgh, etc., R. Co.* v. *Williams* (1881), 74 Ind. 462; *Memphis, etc., Packet Co.* v. *McCool* (1882), 83 Ind. 392, 43 Am. Rep. 71; *Louisville, etc., R. Co.* v. *Thompson* (1886), 107 Ind. 442, 57 Am. Rep. 120; *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 4 L. R. A. (N. S.) 1081.

Instruction one, given at the request of appellee, simply told the jury that where a passenger has been injured by the negligence of the carrier, such carrier cannot be relieved from the responsibility of its negligence by showing that the injury occurred while the carrier was doing business not authorized by its charter.

Instruction two, of which complaint is made, stated to the jury the conditions under which appellee's decedent

might be considered a passenger of appellant, and left the jury to determine the facts from the evidence, and then stated that if such facts were proved, appellant was bound to use due care in carrying the passenger. These instructions are not objectionable, and, when considered in connection with the other instructions given, state the law correctly as applied to the facts of this case.

Appellant also complained of the refusal of the court to give instructions one and two, tendered by it. It is sufficient to say that, so far as these instructions were applicable to the facts of the case, instruction four, tendered by appellant and given by the court, stated the law fully upon the identical propositions presented in instructions one and two, which were refused.

We have read all the instructions given and refused, and under the well-recognized rules for considering instructions, which we deem it unnecessary to repeat here, find no error in either the giving or the refusing to give instructions.

There is no available error shown by the record. Judgment affirmed.